## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

ERIC MALLETT

      PLAINTIFF

  v.

RICHARD H. BRODERICK, JR.

  and

PERFORMANT RECOVERY, INC.

  and

UNITED STATES OF AMERICA, acting through
the RURAL HOUSING SERVICE OF THE
UNITED STATES DEPARTMENT OF
AGRICULTURE, and through
the DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE

      DEFENDANTS

Case No. 1:20-cv-_____

## COMPLAINT

### I.    JURISDICTION AND VENUE

1. The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. Venue is appropriate as Plaintiff and Defendant Broderick are residents of the Town of Lincoln, County of Penobscot and State of Maine and the asserted causes of action arise out of facts occurring in Penobscot and Washington Counties in Maine.

1

## II.      PARTIES

3.  Plaintiff Eric Mallett is a resident of the Town of Lincoln, Penobscot County, Maine.

4.  Defendant Richard H. Broderick, Jr. is a Maine licensed attorney who is a resident of and maintains his law office in the Town of Lincoln, County of Penobscot and State of Maine.

5.  Defendant Performant Recovery, Inc. is a corporation organized and existing under the laws of the state of California and registered to do business in the State of Maine.

6.  Defendant United States of America is named as a Defendant by virtue of the actions of the Rural Housing Service of The United States Department of Agriculture and the Department of The Treasury Bureau of the Fiscal Service

## III.     FACTS REGARDING PLAINTIFF ERIC MALLETT

7.  Plaintiff Eric Mallet (hereafter "Mallett") is a 37-year-old man who has lived in Lincoln, Maine since approximately 2015.

8.  Mallett is presently residing temporarily in the State of Connecticut.

9.  Mallet is totally disabled as a result of a traumatic brain injury which resulted from an attempted suicide approximately 18 years ago.

10. Mallet's sole source of income is Social Security Disability Income benefit paid to him monthly by the United States of America.

11. Mallett is a consumer with respect to the USDA Loan which is the subject of this action.

## IV.     FACTS REGARDING DEFENDANT RICHARD H. BRODERICK, JR.

12. Defendant Richard H. Broderick, Jr. (hereafter "Broderick") is an attorney at law with a principal office in the Town of Lincoln, County of Penobscot and state of Maine.

13. At all times material to this complaint, Broderick has been licensed to practice law in the state of Maine.

14. Broderick is a principal in the law firm called Broderick & Broderick with its principal office in Lincoln, Maine.

15. Broderick regularly engages in the business of attempting to collect debts from consumer residents of the State of Maine.

16. Broderick collects debts using the mails and telephone as instrumentalities of interstate commerce, and regularly engages in attempts to collect debts due to others than himself.

17. Broderick is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and the Maine FDCPA, 32 M.R.S. § 11002(6) & 11003(7)(C).

18. At all times material to the complaint, Broderick was acting to attempt to collect a debt which he claimed was owed to United States of America, acting through the Rural Housing Service of the United States Department of Agriculture

## V.      FACTS REGARDING PERFORMANT RECOVERY, INC.

19. Performant is licensed as a debt collector to collect consumer debts in the State of Maine by the Maine Bureau of Consumer Credit Protection.

20. Performant regularly engages in the business of attempting to collect debts in the State of Maine.

21. Performant e collects debts using the mails and telephone as instrumentalities of interstate commerce, and regularly engages in attempts to collect debts alleged by Performant to be due to others than itself.

22. Performant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and the Maine FDCPA, 32 M.R.S. § 11002(6) & 11003(7)(C).

23. Performant became a debt collector with respect to the loan that is the subject of this action on or before July 6, 2020.

24. Performant became a debt collector with respect to the loan that is the subject of this after the loan at issue went into default.

25. At all times, Performant was acting as a debt collector on behalf of the United States.

26. Upon becoming a debt collector with respect to the loan that is the subject of this action, Performant treated the loan that is the subject of this action as being in default.

## VI.   FACTS REGARING DEFENDANT THE UNITED STATES OF AMERICA, acting through the RURAL HOUSING SERVICE OF THE UNITED STATES DEPARTMENT OF AGRICULTURE

27. The Department of Agriculture including its Rural Housing Service (hereafter "the USDA") is a department of the government of the United States of America (hereafter "the United States").

28. One of the functions of the UDSA is to make mortgage loans to homeowners with homes in rural areas of the country.

29. The Department of Treasury including its Bureau of Fiscal Service (hereafter "Treasury") is a department of the government of the United States.

30. One of the functions of Treasury is to collect funds owed to the United States arising out of mortgage loans made by the USDA that are in default.

## VII.   FACTS REGARDING THE PROPERTY AND THE MORTGAGE

31. On March 30, 2010, Mallet purchased the residential property at 59 Weatherbee Street in Danforth, Washington County, Maine (hereafter "the Property").

32. To finance his purchase of the Property, Mallett obtained a mortgage loan in the amount of $37,550.00 from the United States of America acting through the Rural Housing Service of the United States Department of Agriculture (hereafter "the USDA Loan") and granted that entity a mortgage (hereafter "the Mortgage") on the Property to secure that loan. **A copy of the Mortgage is filed herewith as Exhibit 1.**

33. As a condition of the making of the mortgage loan to Mallett, the USDA required that the Property be inspected by a housing inspector.

34. The housing inspection required by the USDA was falsified and reveal no structural or habitability issues with the Property.

35. Mallett moved into and occupied the Property as his principal residence following the closing on the USDA Loan.

36. Within six months after moving into the Property, major structural and habitably issues became apparent including extensive mold problems throughout the Property which began adversely affecting the health of Mallett.

37. Throughout the following five years, Mallet was in constant communication with the USDA seeking its assistance in dealing with the habitability issues with the Property.

38. In 2015, the USDA sent another housing inspector to the property who confirmed all of the structural and habitability issues with the property and who told Mallett that he should seek another loan to remediate the structural and habitability issues.

39. Mallett could not afford to obtain an additional loan and could not continue to live in the Property due to its unsafe, unhealthy and unhabitable condition.

40. In 2015, Mallett moved from the property to Lincoln, Maine.

41. In 2015 Mallett stopped making mortgage payments to the USDA on the USDA Loan as he needed to use his Social Security Disability Income payments to make his rent payments for his new home in Lincoln, Maine.

42. After moving out of the Property in 2015, Mallett had no economic ability to pay the USDA Loan, and no ability to relieve himself of liability associated with the Property (since he could not sell it with the Mortgage encumbering it), and no ability to bring to an end his liability with respect to the USDA Loan and the ongoing damage to his credit that the continuing default of USDA Loan was causing.

**VIII.   FACTS REGARDING THE FORECLOSURE ACTION**

43. Finally, in the fall of 2019, the USDA ,using Broderick as its attorney, began efforts to foreclose the Mortgage on the Property with Broderick filing a complaint for foreclosure in the Calais District Court captioned *United States of America acting through the Rural Housing Service, USDA, f/k/a the Farmers Home Administration v. Eric Mallett* as Docket Number CALDC-RE-2019-014 (hereafter "the Foreclosure Action").

6

44. The USDA and Broderick asked Mallett to cooperate in the foreclosure process by (a) accepting service of process, (b) by waiving the 90-day redemption period provided for in 14 M.R.S. § 6222, and (c) by consenting to the entry of a judgment of foreclosure.,

45. As an inducement to Mallett to provide the cooperation requested by the USDA, the USDA and Broderick agreed to have the United States waive any right to recover from Mallett any deficiency judgment pursuant to 14 M.R.S. § 6324.

46. Mallett did accept service of process as can be seen in his "Acknowledgement of Receipt of Summons and Complaint, **a copy of which is filed herewith as Exhibit 2.**

47. Mallett did stipulate to the entry of a foreclosure judgment as can be seen by the Stipulation to Judgment, a **copy of which is filed herewith as Exhibit 3.**

48. Mallett did waive his 90-day right of redemption as can be seen by the Motion to Waive Equity of Redemption, a **copy of which is filed herewith as Exhibit 4.**

49. On December 2, 2020, the Calais District Court entered its "Stipulated Judgment of Foreclosure and Sale" (here after the "Foreclosure Judgment") which included in Paragraph 4 the provision that "No Execution shall issue against the Defendant for any deficiency." **A copy of the Stipulated Judgment of Foreclosure and Sale is filed herewith as Exhibit 5.**

50. By operation of Maine law, as of the time of the entry of the Foreclosure Judgment, Mallett ceased to have any legal or equitable interest in the Property and ceased to have any liability for any payment of money to the United States on the USDA Loan.

51. By operation of Maine law, as of the time of the entry of the Foreclosure Judgment, the United States became the owner of the entirety of all legal and equitable title to the Property, subject only to the duty to conduct a public sale of that title in accordance with the provisions of 14 M.R.S. § 6323.

52. Upon the entry of the Foreclosure Judgment, Mallett was immensely relieved to be free of the burdens of the Property and the Mortgage on it and to be able to begin to rebuild his credit and move on with plans to attempt to acquire a new and habitable residence.

## IX.  FACTS REGARDING THE "REINSTATEMENT AND WAIVER OF FORECLOSURE

53. The United States, acting through the USDA and its attorney, Broderick, destroyed Mallett's emotional relief of being free of the Property and liability on the USDA Loan by filing in the Calais District Court a "Reinstatement and Waiver of Foreclosure" dated January 2, 2020 which contained the false statement that "[c]onsistent with 14 M.R.S. § 6323, the mortgagee has allowed the mortgagor to redeem and has reinstated the loan." **A copy of the Waiver of Foreclosure is filed herewith as Exhibit 6.**

54. As a result of the filing by the USDA and Broderick of "Reinstatement and Waiver of Foreclosure,"  the Calais District Court entered on January 13, 2020 an order vacating the Foreclosure Judgment and dismissing the foreclosure complaint of the United States acting through the USDA. This order of the court appears in handwriting on the bottom of Exhibit 6.

55. The effect of the January 13, 2020 order of the Calais District Court was reimpose upon Mallett an equitable title interest in the property and liability for events

occurring on it, and to wipe out the agreement of the United States made on its behalf by the USDA and Broderick to eliminate any remaining liability of Mallett for indebtedness on the USDA Loan.

56. The "Reinstatement and Waiver of Foreclosure" dated January 2, 2020 filed on behalf of the United States by the USDA and Broderick was false because Mallett had not redeemed the mortgage.

57. The "Reinstatement and Waiver of Foreclosure" dated January 2, 2020 filed on behalf of the United States by the USDA and Broderick was also wrongful because the United States had made a contract with Mallett to obtain his cooperation in the Foreclosure Action in return for the agreement of the United States to waive any further liability of Mallett on USDA Loan, and the United States therefore no longer had any legal right to "reinstate" the loan secured by the Mortgage.

58. The "Reinstatement and Waiver of Foreclosure" dated January 2, 2020 filed on behalf of the United States by the USDA and Broderick was also wrongful because the provisions of 14 M.R.S. § 6323 cited in the "Reinstatement and Waiver of Foreclosure" dated January 2, 2020 permitted a mortgagee to waive a foreclosure after the expiration of the period of redemption "only with the written consent of the mortgagor," and there was no consent of Mallett to any such waiver of the foreclosure resulting from the Foreclosure Judgment.

59. Mallett was emotionally distressed and devastated to learn of the filling of the "Reinstatement and Waiver of Foreclosure" and the entry of the court order vacating the foreclosure judgment as he understood that to mean that he was again

responsible for the Property, and that liability for payments on the USDA Loan

was reimposed upon him and that he was thus facing ongoing credit damage and

inability to buy a new home for the indefinite future.

60. Mallett sought the assistance of the Maine Bureau of Consumer Credit Protection

(the "BCCP") with respect to the Mortgage but was advised by the BCCP that it

had no authority over any actions of the United States with respect the Mortgage.

61. The BCCP suggested that Mallett contact the attorney signing this complaint to

see if he could provide legal assistance.

62. On March 4, 2020, the undersigned counsel for Mallett sent to Broderick by mail

a letter containing the following demand:

> In your filing of the "Reinstatement and Waiver" you misrepresented the
> facts to the court in violation of your duties under M.R. Civ. P. 11 and under
> M.R. Prof. Conduct 3.3(a)(1).  On behalf of Eric Mallett, I hereby demand
> that you promptly file with the court a motion under M.R. Civ. P. 60(b) to
> vacate the court's order of January 19, 2020 vacating the foreclosure judgment
> and dismissing the case.

**A copy of the March 4, 2020 demand letter is filed herewith as Exhibit 7.**

63. By letter to Attorney Cox dated March 5, 2020 and copied to the USDA, Attorney

Broderick stated:

> Following the foreclosure action in this matter the agency has concluded that
> its mortgage lien is valueless, and it no longer claims an interest in the subject
> premises. It is the agency's intent to waive its foreclosure and to reinstate the
> mortgagor to whatever rights he had relative to the above premises.

**A copy of the March 5, 2020 letter from Attorney Broderick is filed herewith**

**as Exhibit 8.**

64. On March 11, 2020, the United States and Broderick moved to set aside the order

of the Calais District Court of January 13, 2020 vacating the Foreclosure

Judgment and dismissing the foreclosure case. **A copy of the March 11, 2020 Motion to Vacate Court's Order is filed herewith as Exhibit 9.**

65. By two orders dated March 31, 2020, the Calais District Court vacated its order of January 13, 2020 and reinstated the December 2, 2020 Stipulated Judgment of Foreclosure effective as of its original entry date. **Copies of the two orders of March 31, 2020 are attached hereto as Exhibits 10 and 11.**

## COUNT I—FEDERAL FDCPA AGAINST BRODERICK
### 15 U.S.C. §§ 1692 - 1692p

66. Mallett repeats the preceding allegations of this Complaint as if set forth fully in the Count I.

67. In connection with the actions of Broderick described in Paragraphs 43 though 64 above, he was attempting to collect a debt which he asserted to be owed to the United States arising out of the loan from the USDA to Mallett secured by the Mortgage.

68. In attempting to foreclose the Mortgage and collect the debt relating to the USDA Loan and which Broderick asserted to be due to the United States, and in attempting to vacate the Foreclosure Judgment and reimpose liability upon Mallett for the USDA Loan debt, Broderick used the mail system of the U.S. Postal Service.

69. Broderick violated the provisions of 15 U.S.C. §§ 1692 - 1692p (the FDCPA). Broderick's violations include, but are not limited to, the following:

  a. In filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure," Broderick violated 15 USC §1692d by engaging in

conduct, the natural consequence of which was to harass, oppress or abuse Mallett in connection with the collection of the mortgage debt by falsely representing that Mallett had redeemed the mortgage, by falsely representing that the United States had the legal right to waive the foreclosure resulting from the Foreclosure Judgment and by wrongfully inducing the Calais District Court to vacate the December 2, 2019 Stipulated Judgment and to dismiss the Foreclosure Action.

b.  In filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure,"  Broderick violated 15 USC §1692e by using false, deceptive or misleading representations or means in connection with the collection of Mallett's alleged mortgage debt by falsely stating that he had redeemed the mortgage and by falsely stating that the United States had the legal right to waive the foreclosure resulting from the December 2, 2019 Stipulated Judgment.

c.  In filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure," Broderick violated 15 USC §1692e(2)(A) by falsely representing the character, amount or legal status of the alleged mortgage debt which had been extinguished on December 2, 2019 and by representing that Mallett had redeemed the Mortgage and thereby agreed to or submitted himself to the reinstatement of the debt secured by the Mortgage, which debt Broderick had expressly agreed was to be waived by his agreement to the waiver of any deficiency judgment.

d.  Rushmore violated 15 USC §1692f by using unfair or unconscionable

means to collect or attempt to collect on the mortgage debt by filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure" to seek to reinstate the liability of Mallett on the USDA Loan which had been contractually waived by the United States in connection with the December 2, 2019 Stipulated Judgment.

70. As a result of the above violations of the FDCPA, Broderick is liable to Mallett for Mallett's actual damages, which include damages for emotional distress, statutory damages, costs and attorney's fees and for such other and further relief as may be just and proper.

**WHEREFORE,** Mallet prays for awards of compensatory damages and attorney fees and such other and further relief as the court shall deem appropriate.

## COUNT II—MAINE FDCPA AGAINST BRODERICK
### 32 M.R.S. §§11001 – 11054

71. Mallett repeats the preceding allegations of this Complaint as if set forth fully in the Count II.

72. Broderick violated the provisions of 32 M.R.S. §§ 11001-11054 the Maine FDCPA, which violations include, but are not limited to the following:

    a. In filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure," Broderick violated 32 M.R.S. § 11013(1) by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mallett in connection with the collection of the mortgage debt by falsely representing that Mallett had redeemed the mortgage, by falsely representing that the United States had the legal right to waive the foreclosure resulting from the December 2, 2019 Stipulated Judgment

and by wrongfully inducing the Calais District Court to vacate the December 2, 2019 Stipulated Judgment and to dismiss the Foreclosure Action.

b.  In filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure,"  Broderick violated 32 M.R.S. § 11013(2) by using false, deceptive or misleading representations or means in connection with the collection of Mallett's alleged mortgage debt by falsely stating that he had redeemed the mortgage and by falsely stating that the United States had the legal right to waive the foreclosure resulting from the December 2, 2019 Stipulated Judgment.

c.  In filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure," Broderick violated 32 M.R.S. § 11013(2)(B) by falsely representing the character, amount or legal status of the alleged mortgage debt which had been extinguished on December 2, 2019 and by representing that Mallett had redeemed the Mortgage and thereby agreed to or submitted himself to the reinstatement of the debt secured by the Mortgage, which debt Broderick had expressly agreed was to be waived by his agreement to the waiver of any deficiency judgment.

d.  Rushmore violated 32 M.R.S. § 11013(3) by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by filing the January 2, 2020 "Reinstatement and Waiver of Foreclosure" to seek to reinstate the liability of Mallett on Loan which had been contractually waived by the United States in connection with

the December 2, 2019 Stipulated Judgment.

**WHEREFORE,** Mallet prays for awards of compensatory damages and attorney fees and such other and further relief as the court shall deem appropriate.

### COUNT III—FEDERAL FDCPA AGAINST PEFORMANT
### 15 U.S.C. §§ 1692 - 1692p

73. Mallett repeats the preceding allegations of this Complaint as if set forth fully in the Count III.

74. By a letter dated July 6, 2020 sent to Mallet by Performant, which identified itself in the letter as "a private collection agency under contract with the U.S. Department of Treasury, Bureau of Fiscal Service," Performant stated that the letter was sent "to begin debt collection efforts on your delinquent loan balance owed to Department of Agriculture." **A copy of the July 6, 2020 letter of Performant is filed herewith as Exhibit 12.**

75. The Performant letter of July 6, 2020 stated that Mallett owed a balance of "$84,487.79 as of 07/04/2020," and that "Treasury, and other government agencies may withhold or offset government payments you receive such as income tax refunds, federal retirement benefits and/or financial assistance to satisfy your delinquent debt if it is not paid."

76. The July 6, 2020 letter of Performant concludes with the statement that "This is an attempt to collect a debt by a debt collector…"

77. Performant violated the provisions of 15 U.S.C. §§ 1692 - 1692p (the FDCPA). Performant's violations include, but are not limited to, the following:

  a.  In sending its July 6, 2020 letter to Mallett, Performant violated 15 USC §1692d by engaging in conduct, the natural consequence of which

was to harass, oppress or abuse Mallett in connection with the collection of the mortgage debt by falsely representing that Mallett owed "$84,487.79 as of 07/04/2020," on the USDA loan, and by falsely representing that the United States Treasury Department could offset the alleged debt, which was not owed, against Mallett's federal benefits.

b.  In sending its July 6, 2020 letter to Mallett, Performant violated 15 USC §1692e by using false, deceptive or misleading representations or means in connection with the collection of Mallett's alleged mortgage debt by falsely stating that he owed "$84,487.79 as of 07/04/2020," and by falsely stating that the United States Treasury would offset against his federal SSDI benefits when in fact Mallett owed no money to the United states following the orders of the Calais District court of December 2, 2019 and March 31, 2020.

c.  In sending its July 6, 2020 letter to Mallett, Performant violated 15 USC §1692e(2)(A) by falsely representing the character, amount or legal status of the alleged mortgage debt which had been extinguished on December 2, 2019 and re-extinguished on March 31, 2020 by representing that Mallett owed "$84,487.79 as of 07/04/2020," and that the United States could take his federal SSDI benefits to satisfy the debt which he no longer owed.

d.  Performant violated 15 USC §1692f by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by sending

its July 6, 2020 letter to Mallett asserting that Mallett owed

"$84,487.79 as of 07/04/2020," and that the United States could take

his federal SSDI benefits to satisfy the debt which he no longer owed.

78. As a result of the aforesaid violations of the federal FDCPA by Performant with

its claims that Mallett owed "$84,487.79 as of 07/04/2020," and that the United

States could take his federal SSDI benefits to satisfy the debt which he no longer

owed, Mallet suffered devastating and extreme emotional distress in that, even

though he had obtained legal counsel who assisted in obtaining the court order of

March 31, 2020 re-instating the December 2, 2019 Stipulated Judgment which the

United States had wrongfully tried to renege on, Mallett was put in doubt as to

whether the United States of America would ever leave him alone, as to whether

the United States would ever honor the orders of the Calais District Court, and as

to whether he was doomed to accept unending offsets against his SSDI benefits

until the United States wrongfully extracted over $84,487.79 from him.

79. As a result of the above violations of the FDCPA, Broderick is liable to Mallett

for Mallett's actual damages, which include damages for emotional distress,

statutory damages, costs and attorney's fees and for such other and further relief

as may be just and proper.

**WHEREFORE,** Mallet prays for awards of compensatory damages and attorney

fees against Performant and such other and further relief as the court shall deem

appropriate.

## COUNT IV—MAINE FDCPA AGAINST PEFORMANT
## 32 M.R.S. §§11001 – 11054

80. Mallett repeats the preceding allegations of this Complaint as if set forth fully in the Count IV.

81. Performant violated the provisions of 15 U.S.C. §§ 1692 - 1692p (the FDCPA). Performant's violations include, but are not limited to, the following:

    a. In sending its July 6, 2020 letter to Mallett, Performant violated 32 M.R.S.A. §11013(1) by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mallett in connection with the collection of the mortgage debt by falsely representing that Mallett owed "$84,487.79 as of 07/04/2020," on the USDA loan, and by falsely representing that the United States Treasury Department could offset the alleged debt, which was not owed, against Mallett's federal benefits.

    b. In sending its July 6, 2020 letter to Mallett, Performant violated 32 M.R.S.A. §11013(2) by using false, deceptive or misleading representations or means in connection with the collection of Mallett's alleged mortgage debt by falsely stating that he owed "$84,487.79 as of 07/04/2020," and by falsely stating that the United States Treasury would offset against his federal SSDI benefits when in fact Mallett owed no money to the United states following the orders of the Calais District court of December 2, 2019 and March 31, 2020.

    c. In sending its July 6, 2020 letter to Mallett, Performant violated 32 M.R.S.A. §11013(2)(B)) by falsely representing the character, amount

or legal status of the alleged mortgage debt which had been extinguished on December 2, 2019 and re-extinguished on March 31, 2020 by representing that Mallett owed "$84,487.79 as of 07/04/2020," and that the United States could take his federal SSDI benefits to satisfy the debt which he no longer owed.

d.   Performant violated 32 M.R.S.A. §11013(2)(B) by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by sending its July 6, 2020 letter to Mallett asserting that Mallett owed "$84,487.79 as of 07/04/2020," and that the United States could take his federal SSDI benefits to satisfy the debt which he no longer owed.

82. As a result of the aforesaid violations of the Maine FDCPA by Performant with its claims that Mallett owed "$84,487.79 as of 07/04/2020," and that the United States could take his federal SSDI benefits to satisfy the debt which he no longer owed, Mallet suffered devastating and extreme emotional distress in that, even though he had obtained legal counsel who assisted in obtaining the court order of March 31, 2020 re-instating the December 2, 2019 Stipulated Judgment which the United States had wrongfully tried to renege on, Mallett was put in doubt as to whether the United States of America would ever leave him alone, as to whether the United States would ever honor the orders of the Calais District Court, and as to whether he was doomed to accept unending offsets against his SSDI benefits until the United States wrongfully extracted over $84,487.79 from him.

83. As a result of the above violations of the FDCPA, Broderick is liable to Mallett

for Mallett's actual damages, which include damages for emotional distress, statutory damages, costs and attorney's fees and for such other and further relief as may be just and proper.

**WHEREFORE,** Mallet prays for awards of compensatory damages and attorney fees against Performant and such other and further relief as the court shall deem appropriate.

### COUNT V— DECLARATORY JUDGMENT
### AGAINST UNITED STATES OF AMERICA
### 28 U.S.C. §§ 2201 & 2202

84. Mallett repeats the preceding allegations of this Complaint as if set forth fully in the Count V.

85. By his agreement to accept service of process in the foreclosure action, by his agreement to waive his statutory 90-day right of redemption under 14 M.R.S. § 6322, and by his stipulation and agreement to the December 2, 2019 Stipulated Judgment of Foreclosure and Sale, Mallet gave valuable and sufficient consideration to the United States for its agreement, contained in that judgment to waive any right to seek or recover any deficiency judgment against Mallett.

86. The aforesaid agreements between Mallett and the United States constitute a valid and binding contract between the parties, the effect of which was to eliminate any further right of the USDA to seek or recover any money from Mallett on the USDA Loan.

87. The effect of the December 2, 2019 Stipulated Judgment of Foreclosure and Sale and the March 31, 2020 Orders of the Calais District Court reinstating that

judgment was to eliminate any further right of the USDA to seek or recover any money from Mallett on the USDA Loan.

88. By a letter to Mallett from the U.S. Department of Treasury Bureau of the Fiscal Service dated October 2, 2020 the United States asserted Mallett owes a debt to the "Debt Management Servicing Center," that the letter is sent as a part of a collection action, and that the Department of Treasury will withhold up to 15 percent of Mallett's Social Security benefit payment to satisfy the alleged debt. **A copy of the October 2, 2020 letter of the U.S. Department of Treasury is filed herewith as Exhibit 13.**

89. Mallett has not had any debtor relationship with any agency of the United States other than the one reflected by the USDA Loan.

90.  The aforesaid letter dated October 2, 2020 is an action by the United States to collect on the USDA Loan even though Mallett does not owe any money on that loan.

91. The aforesaid letter dated October 2, 2020 states that the Department of Treasury will withhold up to 15 percent of Mallett's Social Security benefits beginning no sooner than December 20, 2020.

92. A case or controversy exists between Mallett and the United States within the meaning 28 U.S.C. § 2201 with respect to the rights and duties of Mallett and the United States with respect to the USDA Loan and the orders of the Calais District Court dated December 2, 2019 and March 31, 2020.

**WHEREFORE,** pursuant to 28 U.S.C. § 2201 and 2202, Mallett prays that the court will enter a declaratory judgment providing the following relief:

A.  Declaring that, as a result of the agreements of Mallett with respect to the Foreclosure Action and the December 2, 2019 Stipulated Judgment of Foreclosure and Sale, and by virtue of the legal effect of that judgment and the March 31, 2020 orders re-instating that judgment, Mallett does not owe any money to the United States with respect to the USDA Loan;

B.  Declaring that the United States has no right to recovery any money from Mallett which may have been owed on the USDA Loan;

C.  Declaring that neither the United States nor any agency thereof has any legal right to offset against the SSDI benefits of Mallett to recovery any money which may have been due at any time on the USDA Loan;

D.  Ordering that the United States is permanently enjoined from itself, or through Performant or any other agent, taking any action to attempt to recovery any money from Mallett which may at any time have been due on the USDA Loan;

E.  Ordering that the United States, acting through Department of Treasury or any other agency, is permanently enjoined from offsetting against the SSDI benefits of Mallett to recovery any money relating to or at any time owed on the USDA Loan;

F.  Ordering, pursuant to Fed. R. Civ. P. 57 that there will be a speedy hearing on the relief sought by Mallett in this Count V.

G.  Granting such other and further necessary and proper relief as shall be appropriate against the United States.

## DEMAND FOR TRIAL BY JURY

In the filing of this Complaint, Mallett demands trial by jury on all of his claims

against Broderick, Rushmore and the United States.


DATED:  October 20, 2020

/s/ Thomas A. Cox_____
Thomas A. Cox, Esq.,   Me. Bar No. 1248
Attorney for Plaintiff Eric Mallett

P.O. Box 1314
Portland, Maine 04104
(207) 749-6671
tac@gwi.net